**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dean Dill, | No. CV-25-04491-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Massachusetts Mutual Life Insurance Company, | |
| Defendant. | |

On December 5, 2025, Plaintiff Dean Dill filed his first Complaint alleging various violations of the Fair Credit Reporting Act ("FCRA"). (Doc. 1). The Court dismissed the Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and granted Plaintiff leave to amend. (Doc. 15). Plaintiff timely filed his First Amended Complaint ("FAC"), (Doc. 16), which Defendant Massachusetts Mutual Life Insurance Company now moves to dismiss under Rule 12(b)(6), (Doc. 19). Defendant's second Motion to Dismiss is fully briefed, (Docs. 20, 21) and the Court now rules.

## I.    BACKGROUND

The following summary of facts is taken from the FAC, (Doc. 16),[1] and the Court construes the facts alleged therein in the light most favorable to the Plaintiff, accepting all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435

---

[1]    "An amended complaint supersedes the original complaint." *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1274 (9th Cir. 2021) (internal quotations omitted); *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010).

(9th Cir. 2000).

In January 2025, Plaintiff contacted Defendant to request a quote for reinstatement of a "lapsed insurance policy." (Doc. 16 at 5, ¶ 24). In response to this request, Defendant sent Plaintiff two documents titled "Disclosure Authorization" and "HIPAA Authorization" (the "Authorizations"). (Doc. 16 at 5, ¶ 25). The Authorizations prompted Plaintiff to authorize Defendant to access his personal information and medical history. (Doc. 16 at 5, ¶ 25). Because Plaintiff was unwilling to authorize Defendant to access all the requested information, Plaintiff struck certain language from the Authorizations. (Doc. 16 at 5, ¶ 26).

Plaintiff altered the Disclosure Authorization form as follows:

Original version: I hereby authorize any licensed physician, medical practitioner, clinic, hospital, or other medical or medically related facility, insurance company, the MIB,[2] or consumer reporting agency that has any records or knowledge of me or my health, to make such information available to [Defendant].

Plaintiff's altered version: I hereby authorize any licensed physician, medical practitioner, clinic, hospital, or other medical or medically related facility, insurance company, ~~the MIB, or consumer reporting agency~~ that has any records or knowledge of ~~me~~ or my health, to make such information available to [Defendant].

(Doc. 16 at 5, ¶ 27). Plaintiff similarly struck the phrase "consumer reporting agency" from the HIPAA Authorization form. (Doc. 16 at 6, ¶ 28). In doing so, "Plaintiff did not authorize Defendant to access information generated by any consumer reporting agency." (Doc. 16 at 6, ¶ 29).

Despite the lack of authorization, Plaintiff alleges that Defendant requested and received the following information: "(1) codes from other insurance companies underwriting from MIB, (2) prescription and medical claim records from Milliman, (3) Plaintiff's motor vehicle report from LexisNexis, and (4) digital health records from Clareto through eNoah." (Doc. 16 at 6, ¶ 30).

Plaintiff suspected that Defendant had accessed his consumer reports without his

---

[2]    "MIB" stands for the Medical Information Bureau, which is a consumer reporting agency that assists underwriters in evaluating insurance applications.

consent and sent a letter requesting information about the alleged unauthorized disclosure. (Doc. 16 at 7, ¶ 36). Defendant responded and stated that, upon receipt of Plaintiff's letter, Defendant realized Plaintiff had altered the Authorization forms.[3] (Doc. 16 at 7, ¶ 37). Defendant apologized for accessing Plaintiff's consumer reports without his authorization. (Doc. 16 at 7, ¶ 37).

On June 12, 2026, Plaintiff filed his FAC, alleging that Defendant committed multiple willful or negligent violations of the Fair Credit Reporting Act ("FCRA"). (Doc. 16 at 9–10).  Plaintiff alleges that because of Defendant's conduct, he suffered an invasion of privacy, damage to his credit and creditworthiness, and actual damages in the form of anxiety, interruption to his sleep, migraines, nausea, fatigue, weight gain, and tension in his personal relationships. (*See* Doc. 16 at 7–9, ¶¶ 44–54).

Defendant moved to dismiss the FAC under Rule 12(b)(6) for failure to state a claim. (Doc. 16 at 4).

## II.    LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell*

---

[3]    The FAC quotes language from the letter Defendant sent to Plaintiff, but Plaintiff did not attach the letter as an exhibit to the FAC. Defendant attached the letter in its entirety to its Motion to Dismiss and argues that the Court can consider the letter's contents in resolving the pending motion. (Doc. 19 at 6, n.1). The Court agrees, and will consider the letter in resolving Defendant's Motion to Dismiss under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that the "incorporation by reference" doctrine permits courts to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading") (internal quotations omitted); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The [incorporation-by-reference doctrine] prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    DISCUSSION

Plaintiff alleges that Defendant both negligently and willfully violated the FCRA "by using Plaintiff's consumer report without consent and for an impermissible use that falls outside the scope of 15 U.S.C. § 1681b." (Doc. 16 at 7, ¶ 41; Doc. 16 at 9, ¶¶ 57–58).

Although Plaintiff does not specify which subsection of § 1681b that Defendant allegedly violated, the Court interprets the FAC as alleging a violation of § 1681b(f). Under the FCRA, a third-party like Defendant can permissibly access a consumer's consumer report "in connection with the underwriting of insurance," 15 U.S.C. § 1681b(a)(3)(C), but must have the consumer's affirmative consent if the report contains medical information, *id.* § 1681b(g)(1). Plaintiff alleges that he did not give "any consent – verbal, written or otherwise – authorizing Defendant[] to access his consumer report," (Doc. 16 at 7, ¶ 38), but that Defendant nevertheless requested and received various consumer reports containing Plaintiff's medical claim records and digital health records, (Doc. 1 at 16, ¶ 30). Accordingly, Plaintiff alleges that Defendant accessed his information for an unauthorized purpose in violation of 15 U.S.C. § 1681b(f)(1). The Court addresses each of Plaintiff's alleged negligent and willful violations of the FCRA in turn.

### A.   "Negligent" Violation of the FCRA

Under 15 U.S.C. § 1681o, a consumer may recover actual damages and reasonable attorney's fees resulting from negligent violations of the FCRA.

As noted above, the FRCA prohibits a person from using or obtaining a consumer's consumer report for an unauthorized purpose. 15 U.S.C. § 1681b(f)(1). "A plaintiff need allege only facts giving rise to a reasonable inference that the defendant obtained his or her credit report in violation of § 1681b(f)(1) to meet their burden of pleading." *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019). Plaintiffs must also allege actual damages to state a claim for a negligent violation of the FCRA. 15 U.S.C. §

- 4 -

1681o(a)(1); *see also McDermott v. Perfection Collection LLC*, CV-20-00539-PHX-JAT, 2021 WL 1424089, at *5 (D. Ariz. Apr. 15, 2021); *Wright v. HireRight LLC*, CV-23-00493-PHX-SMM, 2025 WL 928852, at *2 (D. Ariz. Mar. 27, 2025) (a plaintiff has the "has the burden of proving that his damages were caused by the defendant's violations of the FCRA") (internal quotations omitted).

This Court dismissed Plaintiff's original complaint for failure to plausibly plead a negligent violation of the FCRA because Plaintiff failed to allege actual damages. (Doc. 15 at 10). The Court reasoned that Plaintiff's original allegations—i.e., that he suffered emotional distress, worry, and anxiety from Defendant's conduct that negatively impacted his life, work and personal relationships—were too speculative and vague to plausibly show actual damages stemming from Defendant's conduct. (Doc. 15 at 11).

Plaintiff's FAC alleges more detailed damages. Plaintiff alleges that his "realization that Defendant accessed his personal information without his consent caused an immediate and pronounced spike in his anxiety levels." (Doc. 16 at 7, ¶ 44). Plaintiff claims his anxiety stems from "wondering whether Defendant would resolve this situation and contemplating which unauthorized individuals may have accessed his report." (Doc. 16 at 8, ¶ 46). Plaintiff alleges that this anxiety caused "routine interruptions to his sleep" and caused him to develop migraines and nausea, which impaired his focus and concentration. (Doc. 16 at 7, ¶ 46). Plaintiff further alleges that "as a consequence of the aforementioned anxiety, [he] began overeating, experiencing noticeable and distressing weight gain." (Doc. 16 at 8, ¶ 47). Plaintiff claims that his "anxiety, fatigue, and attempts to claw back his information from unauthorized disclosure resulted in Plaintiff missing or abbreviating time spent with family as well as personal engagements." (Doc. 16 at 8, ¶ 50). He alleges that he "experienced sudden spikes of anxiety while traveling to and participating in social outings with friends and family," which took a "heavy toll" on those relationships and "create[ed] a sense of isolation for Plaintiff." (Doc. 16 at 8, ¶ 51). Plaintiff claims the exposure of his personal information caused "significant domestic strain" between Plaintiff and his spouse, resulting in "more frequent arguments" over "minor subjects such as what the couple would

eat for dinner" and depriving Plaintiff of a restful home life. (Doc. 16 at 8–9, ¶ 52).

Defendant does not dispute that it violated the FCRA by requesting and accessing Plaintiff's medical information without his consent. Rather, Defendant solely argues that Plaintiff has failed to allege that he suffered actual damages. Defendant contends that Plaintiff's added allegations as to his emotional distress are "merely conclusory, speculative, and cannot be causally linked to [Defendant's] conduct." (Doc. 19 at 8). Defendant primarily challenges Plaintiff's credibility and the truthfulness of his allegations and complains that Plaintiff does not plead he sought "professional help for his supposed anxiety, fatigue, or insomnia, weight gain, and irritability." (Doc. 19 at 10). Defendant also presents an alternative cause for Plaintiff's alleged emotional distress, stating that

> around the time Plaintiff claims he was suffering from severe emotional distress, Plaintiff was preparing his campaign for U.S. Representative in Congress, District No. 6, and around the time the Complaint was filed, commenced his campaign for Justice of the Peace in Pinal County Precinct 2.

(Doc. 19 at 10). Defendant argues that launching, running, and funding the aforementioned campaigns "would cause an individual significant stress," thereby rendering Plaintiff's theory that Defendant caused his emotional distress "untenable." (Doc. 19 at 13).

Although the FCRA provides for compensation for actual damages, which includes recovery for emotional distress and humiliation, *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995), such damages must still be alleged with sufficient specificity to survive a motion to dismiss, *Naimi-Yazdi v. JPMorgan Chase Bank, N.A.*, 5:21-CV-04390-EJD, 2022 WL 2307068, at *3 (N.D. Cal. June 27, 2022); *Sion v. SunRun, Inc.*, 16-CV-05834-JST, 2017 WL 952953, at *2–4 (N.D. Cal. Mar. 13, 2017) (acknowledging that actual damages can include emotional distress, but noting that a plaintiff must support his claim for pain and suffering with more than conclusory allegations, "such as specific claims of genuine injury").

As discussed above, Plaintiff alleges that after realizing Defendant had accessed his personal information without his consent, he experienced "an immediate and pronounced spike in his anxiety levels," which caused him to: develop migraines and nausea;

experience bouts of insomnia; gain weight; miss out on time with his family; limit time he could devote to other personal engagements; and experience domestic strain with his spouse of ten years.  (Doc. 16 at 7–9). Plaintiff explained that his anxiety stemmed from "wondering whether Defendant would resolve this situation and contemplating which unauthorized individuals may have accessed his report." (Doc. 16 at 8, ¶ 46).

The Court understands Defendant's skepticism of Plaintiff's claim that Defendant, by accessing Plaintiff's consumer reports as part of the insurance underwriting process *that Plaintiff himself requested*, caused Plaintiff emotional distress, especially to the extent alleged here. However, the Court must accept Plaintiff's factual allegations as true on a 12(b)(6) motion. *Ashcroft*, 556 U.S. at 664. Thus, the sole question the Court must answer is whether Plaintiff has pleaded facts giving rise to a plausible inference that Plaintiff suffered actual damages as a result of Defendant's conduct. The Court finds that these factual allegations, accepted as true, are sufficient to plead actual damages to state a claim that Defendant negligently violated the FCRA.

### B.  "Willful" Violation of the FCRA

Under 15 U.S.C. § 1681n, any person who "willfully fails to comply" with the FCRA is liable for actual damages, punitive damages, and attorney fees. A plaintiff who pleads willfulness need not plead actual damages to survive dismissal. *Vandonzel v. Experian Info. Sols., Inc.*, No. 17-CV-01819-LMK, 2017 WL 3267571, at *6 (N.D. Cal. July 31, 2017). "A defendant acts 'willfully' for purposes of the FCRA if the defendant knowingly or recklessly disregards its statutory duties." *Harris v. Experian Info. Sols., Inc.*, 16-CV-02162-BLF, 2017 WL 1354778, at *7 (N.D. Cal. Apr. 13, 2017) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). To prove a willful violation of the FCRA, a plaintiff must show (1) that the defendant acted pursuant to an objectively unreasonable interpretation of the FRCA, and (2) that the defendant "ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020). "[A] plaintiff seeking to recover damages under a willfulness theory must allege, at a minimum,

that the defendant's reading of the FCRA is objectively unreasonable." *Harris*, 2017 WL 1354778, at *7 (internal quotations omitted).

This Court dismissed Plaintiff's original complaint for failure to plausibly plead a willful violation of the FCRA because Plaintiff alleged only that Defendant's "acts and omissions" constituted "willful, reckless or negligent violations of the FCRA." (Doc. 15 at 12–13). The Court found the allegation was merely a legal conclusion that was unsupported by facts. Despite previously identifying and analyzing the deficiencies of Plaintiff's original complaint as to his willful violation claim, (Doc. 15 at 12–13), Plaintiff failed to cure these deficiencies in his FAC. Indeed, Plaintiff failed to add *any* factual allegations to support the willfulness claim. (*Compare* Doc. 1 *with* Doc. 16).  Defendant argues the Court should dismiss the willfulness claim because "this Court has already dismissed this claim under the same factual allegations." (Doc. 19 at 7). The Court agrees and will again dismiss Plaintiff's claim that Defendant willfully violated the FCRA.[4]

### C. Miscellaneous

#### i. Invasion-of-Privacy Claim Under Arizona Law

The FAC alleges that "Plaintiff has suffered an invasion of privacy, as well as damage to his credit and creditworthiness." (Doc. 16 at 9, ¶ 53). In response to Defendant's motion, Plaintiff argues that Defendant's "invasion of Plaintiff's privacy" provides an independent basis for damages under Arizona law. (Doc. 20 at 9 (citing *Reed v. Real Detective Publ'g Co.*, 162 P.2d 133, 138 (Ariz. 1945) (acknowledging that invading one's right to privacy gives rise to a cause of action))). Defendant argues that the FAC only pleads a single-count violation of the FCRA and does not separately allege an invasion-of-privacy claim under Arizona state law. (Doc. 21 at 9). Defendant further argues that "Plaintiff

[4]    Plaintiff argues for the first time in his Response to the Motion to Dismiss that Defendant acted recklessly by "failing to scrutinize the returned disclosure documents" before proceeding with the underwriting process. (Doc. 20 at 10). Plaintiff argues that Defendant acted in "reckless disregard of its FCRA responsibilities" because Defendant, despite being aware of its obligations under the FCRA, failed to "maintain adequate procedures to review the forms consumers submitted to it." (Doc. 20 at 10).  However, Plaintiff's arguments regarding Defendant's alleged recklessness and the adequacy of Defendant's internal procedures are wholly absent from the FAC, and thus will not be considered by the Court in resolving the pending motion.

cannot amend his pleading through argument in an opposition brief" and asks the Court to disregard Plaintiff's invasion-of-privacy theory because the FAC does not assert such a claim and Plaintiff did not seek leave to amend his complaint. (Doc. 21 at 9).

The Court agrees that Plaintiff has not pleaded an invasion-of-privacy claim under Arizona law and cannot assert this claim for the first time in response to Defendant's motion. Rather, the Court construes the FAC's allegation that Plaintiff "has suffered an invasion of privacy" as an allegation of actual damages supporting his negligent-violation claim under the FCRA, not as the assertion of a separate state-law cause of action.

ii.   Accessing Plaintiff's LexisNexis Motor Vehicle Report

Plaintiff's original complaint alleged that Defendant improperly accessed his motor vehicle report from LexisNexis during the insurance underwriting process. (Doc. 1 at 6, ¶ 30). Although the Court explained in a previous order that Defendant did not violate the FCRA by accessing the motor vehicle report, (Doc. 15 at 2–3, n.2), Plaintiff re-alleges that Defendant violated the FCRA based on its access of Plaintiff's LexisNexis report, (Doc. 16 at 6, ¶ 30). Defendant contends that Plaintiff ignored the Court's order by re-pleading the FCRA violation on that basis and argues Plaintiff's claims regarding Defendant's access of the LexisNexis report must be dismissed with prejudice.

The Court reiterates the point made in its previous order: Defendant did not violate the FCRA by accessing Plaintiff's motor vehicle report from LexisNexis because (1) the report was obtained for a permissible purpose under 15 U.S.C. § 1681b(a), and (2) the details contained in the report did not contain medical information, thus rendering the consent requirement under 16 U.S.C. § 1681b(g)(1)(A) inapplicable. (Doc. 15 at 2–3, n.2). However, Defendant does not dispute that it violated the FCRA by requesting and accessing Plaintiff's medical information without his consent.

**IV.    LEAVE TO AMEND re: Willful Violation of the FCRA**

Plaintiff contends he has adequately alleged facts to state claims for negligent and willful violations of the FRCA, but notes that in the event the Court identifies some remaining deficiency, he is "confident leave to amend to correct such a deficiency would

- 9 -

not be futile." (Doc. 20 at 11).

Although the decision to grant or deny leave to amend is within the district court's discretion, Rule 15 advises courts to grant leave to amend freely "when justice so requires" and the Ninth Circuit Court of Appeals has instructed that "[t]his policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* at 1052; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

Plaintiff has failed to file a proposed amended complaint that complies with Local Rule 15.1. LRCiv. 15.1 ("A party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added."). Therefore, the Court cannot assess whether the deficiencies of Plaintiff's willful-violation claim could be cured by amendment. Accordingly, leave to amend (for a second time) is denied without prejudice to Plaintiff filing a motion to amend in compliance with Rule 15 and Local Rule 15.1 within the deadline to be set at the Rule 16 conference.

V.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant's second Motion to Dismiss (Doc. 19) is **granted in part and denied in part** as specified herein.

/ / /

/ / /

/ / /

- 10 -

**IT IS FURTHER ORDERED** that an Order setting a Rule 16 scheduling conference will follow.

Dated this 7th day of August, 2026.

James A. Teilborg
Senior United States District Judge

- 11 -